**D. Michael Reilly**, *admitted pro hac vice*
reillym@lanepowell.com
**LANE POWELL PC**
1420 Fifth Avenue, Suite 4200
Seattle, Washington 98111-9402
Telephone: 206.223.7000

**Bruce C. Hamlin**, OSB No. 792542
hamlinb@lanepowell.com
**Hans N. Huggler**, OSB No. 144993
hugglerh@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100

Attorneys for Metropolitan Life Insurance Company

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **JANE A. MEDEFESSER,** | Case No. 6:18-CV-00041-MK |
| Plaintiff, | |
| v. | Defendant's<br>OBJECTIONS TO FINDINGS AND<br>RECOMMENDATION |
| **METROPOLITAN LIFE INSURANCE COMPANY,** | |
| Defendant. | |

## I. INTRODUCTION

In this ERISA benefits case, Jane Medefesser ("Medefesser") asserts that as of March 2017, she was entitled to continued disability benefits from MetLife beyond the two years of benefits she had already received, because she remained physically and cognitively limited by

PAGE 1 -    DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

fibromyalgia and Sjogren's disease.  Yet in July 2017, Medefesser's own treating rheumatologist reported Medefesser "ha[d] an arthritic condition which is being treated and followed" but was "not functionally limiting."  (AR 686)[1]  In addition, Medefesser's primary care physician reported that "from a cognitive stand point alone she would be able to perform sedentary office work" with some physical limitations.  (AR 665.)  And over the life of Medefesser's claim, MetLife obtained *eight* expert independent medical opinions on her condition, including an in-person independent medical examination only months before MetLife terminated benefits.  Only *one* of those eight independent physicians concluded Medefesser was sufficiently functionally limited so as to preclude work—and MetLife *paid disability benefits to Medefesser for two years* based upon that opinion, only terminating benefits when more recent medical opinions indicated improvement in Medefesser's condition, and the plan's definition of disability changed.

Yet despite the substantial evidence weighing against Medefesser's assertion of continued total disability, Magistrate Judge Kasubhai's Findings and Recommendation ("F&R") focuses and relies on that single, stale medical opinion to the exclusion of all the other independent medical opinions (including several more timely opinions); incorrectly concludes that the 2016 medical opinion supports a finding of permanent disability; and recommends that the Court grant judgment in Medefesser's favor and order MetLife to resume payment of benefits unless MetLife can demonstrate Medefesser's condition has "improved" in the future.  (ECF No. 36.)  The F&R's conclusion is factually and legally wrong, and the Court should reject the F&R in full.

The F&R arrives at the wrong conclusion through errors of law that render its analysis fatally flawed.  The F&R improperly shifts the burden of proof to MetLife, wrongly discounts the substantial evidence unfavorable to Medefesser (including an in-person independent medical

---

[1] In this case, the Court reviewed the "record of decision" constituting the records and correspondence relied upon by MetLife in determining Medefesser's eligibility for benefits under her employee welfare benefits plan.  Those documents were lodged with the Clerk of Court (ECF No. 15) and cited by page number as marked using the "AR" prefix.

PAGE 2 -    DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

examination and two comprehensive specialist medical opinions), and overemphasizes a single, stale medical opinion based on old medical evidence to conclude Medefesser is totally disabled. And the F&R recommends this Court impose an on-going burden of proof on MetLife contrary to the Plan's terms and in direct conflict with the principles of ERISA law.  For those reasons and the reasons set out in MetLife's underlying briefs at ECF Nos. 23 & 29, the Court should reject the F&R, enter judgment for MetLife, and dismiss this suit with prejudice.

## II.  SUMMARY OF FACTS

A detailed statement of the facts appears in MetLife's Response in Opposition to Plaintiff's Motion for Judgment Pursuant to Federal Rule of Civil Procedure 52(a) and Defendant's Cross Motion at ECF No. 24, pages 7 through 30.  Those facts can be summarized as follows:

Medefesser, a software engineer, which is a sedentary position, stopped working on March 7, 2014.  Medefesser applied for short- and long-term benefits disability benefits from MetLife pursuant to the terms of the Group Short Term and Long Term Disability Plan for Employees of Juniper Networks, Inc. (the "Plan"), for which MetLife was the claim administrator.  (AR 575-633.)  At that time, Medefesser was required to demonstrate her condition rendered her unable to perform her "own occupation."  (AR 598.)  MetLife obtained numerous independent expert physician opinions of Medefesser's condition, all of which concluded she was *not* so limited.  But after a single expert opined that Medefesser's records suggested she was physically unable to perform sedentary work for a full 8-hour day as of early 2016, MetLife approved Medefesser for long-term benefits and paid benefits for two years.

Soon after approving Medefesser for benefits, MetLife received information that she was acting as caregiver for her chronically-ill mother, raising questions as to her stated inability to work.  Critically, the Plan's two-year "own occupation" period was also coming to a close, and to maintain benefits Medefesser was required to prove eligibility under the more stringent requirement that she be unable to work at "any occupation."  Accordingly, MetLife reviewed

PAGE 3 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

Medefesser's eligibility for continued benefits, including obtaining an in-person physical examination by an expert in occupational medicine. That examination, contemporary medical evidence, and other expert medical opinions showed that Medefesser was both cognitively and physically capable of full-time sedentary work as of March 2017, making her ineligible for continued benefits under the express terms of the Plan. MetLife terminated Medefesser's benefits, and after unsuccessful appeals, this suit followed.

On September 5, 2019, Magistrate Judge Kasubhai issued the F&R recommending the Court grant judgment in favor of Medefesser. (ECF No. 36.) The F&R erroneously (1) retroactively applies the "any occupation" disability standard and finds Medefesser met that standard as of 2014; (2) discounts contemporary evidence and independent medical expert opinions in favor of the now-stale opinion of a single reviewing physician that was based on medical evidence that is no longer current; (3) recommends that this Court impose an evidentiary burden foreign to the Plan that requires MetLife to demonstrate Medefesser's condition has "improved" prior to any subsequent termination of benefits, and (4) concludes that MetLife had not shown that Medefesser's condition had "improved" as of 2017. (*Id.* at 9-23.) On these findings, the F&R concluded Medefesser remained eligible for benefits when they were terminated in March 2017. (*Id.*)

For the reasons set out below, the F&R's analysis is fatally flawed. The Court should reject the F&R and enter judgment in favor of MetLife.

### III.  STANDARD OF REVIEW

**A.    Standard of Review by District Court on Findings and Recommendation.**

This Court's evaluation of the F&R is governed by 28 U.S.C. § 636(b)(1), which provides that when a party files objections to a magistrate judge's findings and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Rule 72(b) likewise provides that a district judge "must determine de novo any part of the

PAGE 4 -     DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

105460.0084/7785583.1

magistrate judge's disposition that has been properly objected to."  That review includes resolving 'issues of fact as well as issues of law.'"  *Hamilton v. Silven, Schmeits & Vaughan, P.C.*, No. 09-CV-01094-SU, 2011 WL 6888564, at *6 (D. Or. Dec. 23, 2011) (Simon, J.) (quoting *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011) (internal quotation marks and citation omitted)).

**B.     Underlying Standard of Review.**

The issue in this ERISA case is straightforward: As of March 9, 2017, was Medefesser eligible for benefits under the terms of her disability benefits Plan?  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (on de novo review, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits * * *.").

At the claims stage and here on review, Medefesser has the burden of proving her entitlement to benefits.  *See Muniz v. Amec Constr. Mgmt.*, 623 F. 3d 1290, 1294 (9th Cir. 2010).  (AR 607.)  ERISA claims reviewed *de novo* are tried on the record pursuant to Federal Rule of Civil Procedure 52.  *See Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311, 1314 (D. Or. 2012) ("a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute.") (citations omitted).  As explained in detail below, the F&R erred by imposing a different standard, requiring MetLife to prove Medefesser's condition had "improved" from the time she had been approved to receive benefits under a different, less stringent standard.  The Court should reject the F&R and conclude that Medefesser has not met her burden and was no longer eligible for benefits as of March 9, 2017.

PAGE 5 -     DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

105460.0084/7785583.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

## IV. ARGUMENT

A. **The F&R Erroneously Applied an "Improvement" Standard on *De Novo* Review, Improperly Shifting the Burden of Proof From Medefesser To MetLife and Crediting a Single Expert Medical Opinion Finding Her Functionally Limited to the Exclusion of the Numerous Opinions (Several More Recent) Finding Her Capable of Working.**

The F&R finds that Medefesser's present and on-going disability was established by the 2016 opinion of Dr. Tracy Schmidt, and holds that Medefesser is entitled to judgment because MetLife failed to show subsequent improvement in Medefesser's condition. This erroneous conclusion flows from the F&R's incorrect framing of its analysis around Ninth Circuit *dicta* from the case *Saffon v. Wells Fargo & Co. Long Term Disability Plan*. 522 F.3d 863, 870-71 (9th Cir. 2008). There, the Ninth Circuit discussed whether an insurer had engaged in the ERISA-required "meaningful dialogue" with a disability claimant. In criticizing the insurer's claim decision, the court commented that the insurer "had been paying Saffon long-term disability benefits for a year, which suggests that she was already disabled. In order to find her no longer disabled, one would expect [her medical records] to show an improvement, not a lack of degeneration." *Id.* at 871. That limited comment, made among numerous other criticisms of the insurer's communications with the claimant, led the court to hold the insurer had failed to meet the "meaningful dialogue" requirement, calling its claim decision and exercise of discretion into question and to require remand for further consideration of evidence by the district court. *Id.* at 873.

The F&R's legal reliance on *Saffon*'s *dicta* is error. It improperly shifts the burden to prove entitlement to continuing Plan benefits from Medefesser to MetLife. *Muniz*, 623 F. 3d at 1294 (burden of proving entitlement to benefits on plaintiff). *Saffon*'s limited discussion of "improvement" appeared as part of a critique of an insurer's exercise of *discretion* in a case wherein the court was engaged in an "abuse of discretion" review. *See Saffon*, 522 F.3d at 869-73. By contrast, in this case subject to *de novo* review, MetLife's analysis and rationale for terminating benefits (though sound and correct) are not strictly at issue. Rather, the Court's role

PAGE 6 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

is to *itself* review the record and determine whether Medefesser was or was not eligible for benefits under the Plan as of March 17, 2017. *Murphy v. Cal. Physicians Servs.*, 213 F. Supp. 3d 1238, 1243 (N.D. Cal. 2016) (on *de novo* review, the court "considers the matter anew, as if no decision had been rendered"). By framing its analysis around an improper evidentiary burden of "improvement," the F&R over-weights the stale, point-in-time opinion of Dr. Schmidt, and grants that single medical opinion—which was not a permanent finding and has since been superseded by additional expert medical opinions based on updated medical evidence—undue status as a benchmark *MetLife* was required to overcome. That approach ignores the voluminous evidence showing Medefesser's condition was not severe enough to preclude working at "any occupation," including numerous opinions rendered before and after Dr. Schmidt's review and the in-person examination, treating physician opinions, and contemporary medical records most relevant to determining her condition in 2017. *See Gary v. Unum Life Ins. Co. of Am.*, 388 F. Supp. 3d 1254, 1280 (D. Or. 2019) ("The crux of this case centers on the sufficiency of the medical evidence on or around April 6, 2015, the date on which Defendant determined Plaintiff no longer established she was disabled under the Plan."). This is error, and the Court should re-assess the record focusing on the contemporary medical evidence, which shows Medefesser is no longer entitled to benefits under the Plan.

Moreover, even if this were an abuse-of-discretion case, *Saffon* would have no bearing. In *Saffon*, the claimant was approved for and later terminated under the *same* disability standard. *See Saffon v. Wells Fargo & Co. LTD Plan*, 2009 WL 2969687, *3 (C.D. Cal. Sept. 15, 2009) (on remand) ("after paying benefits to the plaintiff since June 10, 2002, based on a finding that she was unable to perform her regular occupation, MetLife terminated the benefits retroactive to June 16, 2003. The termination of benefits was not because of a change in the test for disability from "own occupation" to "any occupation." The plan/policy provides for 24 months of benefits under the "own occupation" definition of disability and the plaintiff had only received one year of benefits at the time they were terminated.") By contrast, here MetLife's decision was made

PAGE 7 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

concurrent with a change from the less-stringent "own occupation" standard to the *more stringent* "any occupation" standard.  It is *Medefesser* who has the burden of showing continued eligibility for benefits under the more stringent standard, not MetLife's obligation to show "improvement" of her condition to justify terminating eligibility.

The F&R acknowledged this critical distinction between Medefesser's claim and *Saffon*.  (ECF No. 36 at 8.)  But rather than correctly put *Saffon* aside when considering the record *de novo*, the F&R bootstraps *Saffon*'s framework into its decision by retroactively applying the more stringent "any occupation" standard onto the evidence MetLife developed as to Medefesser's condition in the "own occupation" period.  This approach is inconsistent with *de novo* review, and inconsistent with ERISA's structure and goals.  In 2014, MetLife's fiduciary obligation to the Plan was to determine whether Medefesser was unable to perform her "own occupation," and MetLife investigated Medefesser's condition to the extent necessary to make that determination.  (AR 1162-64.)  Had MetLife's 2014 obligation been to determine whether Medefesser's eligibility under the more stringent "any occupation" standard, it might have developed further evidence, including obtaining an Independent Medical Examination as it did in 2017.  (AR 999-1107.)

By retroactively imposing the more stringent standard on an earlier time period, the F&R engaged in an improper apples-to-oranges comparison that treats MetLife's 2016 appeal decision as something it was not—an investigation in to Medefesser's qualification for "any occupation" benefits.  Doing so is inconsistent both with ERISA and the Plan's express terms, which require periodic updated proof of continuing disability for continued entitlement to benefits.  The Court should not adopt the F&R's flawed analysis.  Instead, the Court should re-analyze the record, focusing its *de novo* inquiry on the contemporary evidence from 2017 showing Medefesser no longer has cognitive or physical restrictions and limitations preventing sedentary work in "any occupation" as required by the Plan, and enter judgment in favor of MetLife.

PAGE 8 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

## B. The F&R Improperly Under-Weighted Expert Physician Opinions Concluding Medefesser Was Able to Work.

Compounding the error of applying an "improvement" standard in this *de novo* case, the F&R erroneously discounts the opinions of multiple independent expert physicians to reach its conclusion that Medefesser is entitled to judgment in her favor. In *Salomaa v. Honda Long Term Disability Benefits Plan*, the Ninth Circuit held an insurer's requirement of "objective evidence" of a claimant's medical *diagnosis* of fibromyalgia and chronic fatigue syndrome was an abuse of discretion, because "[m]any medical conditions depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established until autopsy." 642 F.3d 666, 678 (9th Cir. 2011). The F&R incorrectly criticizes and discounts the opinions of Dr. Armstrong-Murphy, who personally examined Medefesser, and Dr. Marwah, who reviewed and opined on Medefesser's complete medical records, for declining to opine on functional limitations for "lack of objective evidence." (ECF No. 36 at 21.) But it is the F&R's analysis that is flawed, not the medical opinions.

First, *Salomaa* dealt with an insurer's imposition of an objective evidence requirement and denial that its insured had a medical condition *at all*. 642 F.3d at 671. By contrast, MetLife has never questioned the validity of Medefesser's diagnoses. Rather, it was MetLife's obligation (and this Court's task) to determine whether Medefesser has shown she remains *functionally limited* due to those diagnoses, and thus meets the Plan's disability standard. Limitation is observable and testable based on the *severity* of Medefesser's symptoms. And the severity of those symptoms are what is at issue here—Medefesser worked with her conditions for years before she perceived her *symptoms* as severe enough to preclude work. (*See, e.g.*, AR 238 ("she has had a fibromyalgia diagnosis for 1.5 years, but based on symptoms may have had it ten years or longer").)

Second, *Salomaa* focused on an insurer claim manager's interpretation of medical evidence. Here, by contrast, two independent expert *physicians* were asked to opine on Medefesser's *functional limitations*, and found they could not opine on limitations without

PAGE 9 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

observable evidence of those limitations.  Dr. Armstrong-Murphy, who personally examined Medefesser, relied on her professional observations and independent examination of Medefesser, along with Medefesser's clinical history and testing, to conclude "[a]ll sedentary activities would be reasonable throughout an 8-hour day at a full-time capacity," with limitations on bending, lifting, and overhead activity.  (AR 1006.)  Likewise, Dr. Marwah, whose opinion the F&R dismisses as "disingenuous," recognized the distinction between diagnosis and functional limitations, and noted the lack of evidence of the latter:

> While this claimant does have features of fibromyalgia and Sjogren's syndrome along with ADD and a component of anxiety and depression with multiple stressors personal and family related, this does not indicate that the claimant is not able to perform her job duties. * * *
>
> She does not have any abnormal physical exam findings to support a neurological disorder and inability to perform her job. From a rheumatology standpoint, while she does have fibromyalgia with tender points, mild rotator cuff tendinitis, and degenerative lumbar spine disc disease, this should not be an impediment at all to her work performance. Interestingly, the claimant is said to have sleep apnea, but this issue has not been addressed by any of the providers. It is not clear as to when if at all she had a sleep study done. She has not been counseled on sleep hygiene and this could be a relevant factor to her cognitive difficulty and poor functionality in general.  **There is no objective evidence to support this claimant's inability to work on a full-time regular basis without any restriction or limitation based on the documentation submitted and the reports from the various providers.**
>
> The claimant is not considered to be **functionally incapacitated** from an internal medicine, rheumatology, and neurology standpoint. While she has had documented life stressors and family problems, this would not pose as an impediment to her work ability.
>
> As clearly stated above, **while Ms. Medefesser has features of fibromyalgia, serological evidence of Sjogren's syndrome, osteoarthritis of the hands and lumbar spine, and mild rotator cuff tendinitis, this should not pose any impediment to her work performance.** She has a component of anxiety, depression,

> multiple life stressors, ADD, and sleep apnea. **All of these could be appropriately managed and controlled and she could function at her job without restriction or limitation**. She will of course need ongoing appropriate medical care and follow-up. (AR 682-83 (emphasis added).)

Dr. Armstrong-Murphy and Dr. Marwah properly found Medefesser was not *functionally limited* based on the lack of current clinical medical evidence that she was not physically capable of work. The F&R improperly discounts those opinions, contributing to its erroneous conclusion that judgment should be granted in Medefesser's favor. Accordingly, the Court should reject the F&R, and after properly analyzing the record, grant judgment in favor of MetLife.

**C.     The Evidence Shows Medefesser Was Again Able to Work in 2017, And Therefore Longer Eligible for Benefits.**

MetLife's underlying briefing sets out the evidence establishing Medefesser's ability to perform sedentary work in detail. (ECF No. 24 at 35-39; ECF No. 29 at 2-5.) MetLife did what this court has urged it to do when questions of functionality arise as to difficult-to-measure conditions such as fibromyalgia and chronic fatigue—it obtained an independent medical examination. *See, e.g., Petrusich v. Unum Life Ins. Co. of Am.*, 984 F. Supp. 2d 1112, 1122 (D. Or. 2013). Dr. Armstrong-Murphy, who examined Medefesser, concluded based on her detailed physical examination and her review of Medefesser's medical records, that Medefesser was not limited to the extent she could not perform sedentary work. (AR 999-1007.) Dr. Armstrong-Murphy's contemporaneous examination should be afforded great weight by the Court for objectively analyzing Medefesser's *capacity* to work. The F&R errs in elevating Dr. Supplitt's opinions, founded primarily if not solely on Medefesser's self-reported symptoms, over Dr. Armstrong-Murphy's specialized professional assessment of Medefesser's physical abilities.[2] The expert medical opinions of Dr. Marwah and Dr. Becker further establish that while Medefesser suffers from fibromyalgia and Sjogren's disease, the *symptoms* of those ailments do

---

[2] Dr. Supplitt's treatment records reflect limited to no physical examination of Medefesser, and his opinions appear to rely primarily on Medefesser's self-reporting. Indeed, it was *Medefesser* who initiated her work stoppage, with Dr. Supplitt endorsing it as a "reasonable idea" on the premise that it would be an eight-to-twelve week down period. (AR 299.)

PAGE 11 -     DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
105460.0084/7785583.1             PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

not limit her from engaging in sedentary work. (AR 673-683 (Marwah); AR 686-697 (Becker).) Dr. Marwah's opinion in particular should be given great weight by the Court—only Dr. Marwah had the benefit of the complete medical record for review, giving him the best ability to holistically evaluate Medefesser. *See Pearson v. Aetna Life Ins. Co.*, 2016 WL 2745299, *6 (W.D. Wa. 2016) (granting greater deference to insurer's medical reviewers, who had access to treating physician opinions, medical records, and results of in-person examination).

The F&R also ignores entirely or under-weighs additional key evidence of Medefesser's contemporary abilities as of the date of MetLife's 2017 review. Such evidence includes:

- Dr. Karplus, Medefesser's treating rheumatologist, was consulted by independent neurologist Dr. Becker, and reported that Medefesser had "an arthritic condition" that was not functionally limiting and that "from a rheumatologist's perspective" Medefesser could return to work. Dr. Karplus also reported that while Medefesser was taking medications to manage her conditions, Dr. Karplus did not believe those medications had "significant side-effects on cognitive or psychiatric aspects of the claimant's presentation." (AR 686.) The F&R omits any mention of this evidence, which *accords* with the opinions of both Dr. Armstrong-Murphy, who examined Medefesser, and of Dr. Marwah, an expert rheumatologist who concluded Medefesser was not functionally limited. (AR 999-1007; AR 673-83.) Notably, Dr. Karplus was sent Dr. Marwah's analysis for comment and made no response.

- Dr. Supplitt, Medefesser's primary care physician, stated that "from a cognitive stand point alone she would be able to perform sedentary office work but her physical issues seem to preclude that." (AR 665.) The F&R omits this evidence, failing to note that it *accords* with both (1) Dr. Karplus's opinion that Medefesser was not suffering from cognitive medication side effects (AR 686) and (2) the opinion of expert neuropsychologist Dr. Becker, who concluded Medefesser was not cognitively limited. (AR 686-697.) Nor does the F&R reconcile Dr. Supplitt's opinion on Medefesser's physical capacity (made on the basis of Medefesser's self-reports) with the contrary view of Dr. Karplus, Medefesser's treating rheumatologist best positioned to provide a hands-on view of her functional capacity.

- The F&R fails to note that Dr. Goodwin's 2017 opinion of Medefesser's cognitive ability was expressly premised on "the nature of [Medefesser's] prior employment with the likelihood of very little room for error" and does not offer an opinion of Medefesser's ability to perform sedentary work generally. (AR

PAGE 12 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

- 865.)  As discussed above, MetLife approved and paid Medefesser's claim through the Plan's entire "own occupation" period, and Medefesser's ability to perform her "own occupation" is not at issue here.

- Nor does the F&R address the opinion of Dr. Leibowitz, Medefesser's treating psychologist, who noted that "I have no doubt that [Medefesser] would pass a mini mental status exam with flying colors" and only comments on Medefesser's functional capacity in the context of the skills "required in a high tech industry that demands quick thinking, efficient problem-solving and the meeting of multiple deadlines." (AR 197-99.) Again, the pertinent question is Medefesser's ability to perform sedentary work, not her ability to perform her prior occupation.

- The F&R omits mention of the evidence showing Medefesser's symptoms respond well to treatment, including notes from Dr. Supplitt (AR 842, 1279-80) and Dr. Karplus (AR 1581-82, 1584). That evidence *accords* with Dr. Karplus's 2017 conclusion that Medefesser was not functionally limited while under treatment, and Drs. Armstrong-Murphy and Marwah's conclusions of the same.

In summary, through the combination of its flawed analytic and legal framework, mistaken reliance on Dr. Schmidt's opinion as a permanent establishment of disability, improper discounting of expert opinions under *Salomaa*, and ignoring medical evidence unfavorable to Medefesser's claim for further benefits, the F&R comes to the erroneous conclusion that Medefesser is entitled to judgment in her favor. But on the full record presented, the Court should conclude that as of March 2017, the preponderance of the evidence shows Medefesser was capable of sedentary work, and accordingly was no longer eligible for continued benefits. Accordingly, the Court should enter judgment in MetLife's favor.

**D.   Even if Medefesser Were Entitled to Judgment in Her Favor (and She is Not), Imposing an Ongoing Burden of Showing "Improvement" on MetLife's Future Determinations of Medefesser's Eligibility for Benefits Violates the Plan Terms and ERISA and Constitutes Error.**

The evidence shows that Medefesser was ineligible for benefits as of March 2017, and the Court should enter judgment in MetLife's favor. But even if it does not, the Court should reject the F&R's recommendation that it order MetLife to "pay [Medefesser's] LTD claim to the policy's [*sic*, Plan's] maximum benefit duration absent a showing of improvement in her medical

PAGE 13 -    DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

condition such that a reasonable physician would conclude that she could "engage with reasonable continuity in any occupation in which [she] could reasonably be expected to perform satisfactorily in light of [her] age[,] education[,] training[,] experience[,] station in life[,] and physical and mental capacity that exists within any of [the] locations [listed.]"  (ECF No. 36 at 24.)

Section 1132(a)(1)(B) of 29 U.S.C. creates a cause of action for a claimant to "recover benefits * * * under the terms of his plan * * * or to clarify his rights to future benefits *under the terms of the plan.*"  (Emphasis added.)  The F&R's proposed imposition of a requirement of "improvement" violates the Plan terms, which impose on *Medefesser* the continuing burden to prove her on-going eligibility for benefits.  (AR 607 ("To verify that You continue to be Disabled without interruption after Our initial approval, We may periodically request that You send Us Proof that You continue to be Disabled.").)  There is no basis in the Plan for imposing a burden of finding "improvement" on MetLife, and no statutory power of the Court to do so under § 1132(a)(1)(B).  Nor can the Court treat Dr. Schmidt's 2016 opinion as establishing that Medefesser's condition as of that time is permanent for Plan administration purposes—MetLife has an on-going obligation to the Plan to evaluate all claimants' eligibility for benefits as circumstances warrant.  Indeed, courts have rejected requests for such declarations out of concern for ripeness and the effect of such an order on Plan administrative review processes.  *See, e.g.*, *Peer v. Liberty Life Assur. Co.*, 758 Fed. App'x 882, 884 (11th Cir. 2019).  For all these reasons, if the Court finds Medefesser is entitled to judgment in her favor (which it should not), it should simply order she be returned to benefits status pursuant to the terms of the provisions of the Plan.  Future benefits under the Plan are not guaranteed.

PAGE 14 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

105460.0084/7785583.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

## V. CONCLUSION

For the reasons above and the reasons set out in MetLife's underlying briefs at ECF Nos. 23 and 29, the Court should reject the F&R, enter judgment for MetLife, and dismiss this suit with prejudice.

DATED: September 18, 2019

                        LANE POWELL PC

                        By  s/ Hans N. Huggler
                             D. Michael Reilly, *admitted pro hac vice*
                             Bruce C. Hamlin, OSB No. 792542
                             hamlinb@lanepowell.com
                             Hans N. Huggler, OSB No. 144993
                             hugglerh@lanepowell.com
                             Telephone: 503.778.2100
Attorneys for Metropolitan Life Insurance Company

PAGE 15 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION